UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AARON KENNETH HILDERBRANDT,

    Plaintiff,

v.                                           Case No: 5:17-cv-35-Oc-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Aaron Kenneth Hilderbrandt, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB on September 11, 2015, alleging a disability onset date of March 4, 2015. (Tr. 165-66). Plaintiff's application was denied initially on February 4, 2016, and upon reconsideration on April 26, 2016. (Tr. 99-101, 105-09). Plaintiff requested a hearing and, on August 11, 2016, an administrative hearing was held before Administrative Law Judge Eric S. Fulcher ("the ALJ"). (Tr. 39-63). On September 23, 2016, the ALJ entered a decision finding that Plaintiff was not under a disability from March 4, 2015, through the date of the decision. (Tr. 17-38). Plaintiff filed a request for review which the Appeals Council denied on November 20, 2016. (Tr. 1-4). Plaintiff initiated this action by filing a Complaint (Doc. 1) on January 27, 2017.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 4, 2015, the alleged onset date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: status post gunshot wound to the right hip, degenerative disc disease of the cervical and lumbar spine, migraine headaches, obesity, obstructive sleep apnea, posttraumatic stress disorder, anxiety disorder, major depression, adjustment disorder, and status post traumatic brain injury/concussion with mild neurocognitive

disorder. (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) with certain additional limitations. Specifically, the claimant can lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand, walk, and sit up to six hours each in an eight-hour workday. The claimant can frequently use foot controls on the right. The claimant can frequently climb ramps and stairs. The claimant can never climb ladders, rope, and scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant can be occasionally exposed to dust, odors, fumes, pulmonary irritants and vibrations. The claimant should avoid all exposure to hazards, such as unprotected heights and moving machinery. The claimant is able to perform simple, routine, repetitive tasks and make simple work related decisions.

(Tr. 24). The ALJ also found that Plaintiff can have no more than occasional interaction with coworkers, supervisors, and the general public. (Tr. 24). At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a welder fabricator, pipe fitter welder, bouncer, and army cavalry staff. (Tr. 32).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 32-33). Specifically, the ALJ found that Plaintiff can perform such occupations as merchandise marker, warehouse support worker, and cleaner. (Tr. 33). The ALJ concluded that Plaintiff had not been under a disability from March 4, 2015, through the date of the decision, September 28, 2016. (Tr. 33).

II.     Analysis

Plaintiff raises two issues on appeal:  (1) whether the ALJ erred by failing to apply the correct legal standards to the opinion of Plaintiff's treating physician, Bhupinder S. Mangat, M.D.; and (2) whether the ALJ erred by failing to apply the correct legal standards to the decision from the Department of Veterans Affairs. (Doc. 17 p. 1).

**a) Whether the ALJ erred by failing to apply the correct legal standards to the opinion of Plaintiff's treating physician, Bhupinder S. Mangat, M.D.**

Plaintiff argues that substantial evidence does not support the ALJ's decision to accord "little weight" to the opinion of Dr. Mangat. (Doc. 17 p. 12-17).  Defendant argues that the ALJ properly articulated good cause for giving Dr. Mangat's opinion "little weight" and that Plaintiff's argument amounts to an attempt to substitute his assessment of the evidence for that of the ALJ. (Doc. 21 p. 6-12).

The record shows that Plaintiff was referred to Dr. Mangat, at Seminole Neurology Associates, for a neurophysiological evaluation on April 21, 2015. (Tr. 337-338).  Dr. Mangat continued to see Plaintiff for follow-up appointments on June 18, 2015, July 10, 2015, and August 17, 2015. (Tr. 320-340).  Examinations revealed muscle spasms (Tr. 322, 327, 332), decreased sensation in the lower limb (Tr. 322, 327, 332, 337), and positive Phalen's test. (Tr. 337). Nerve conduction studies revealed abnormalities in the right tibial nerve. (Tr. 338).  Dr. Mangat diagnosed anxiety (Tr. 320), depression (Tr. 320, 333), cervical radiculopathy of nerve roots in the neck, and sacral radiculopathy at the base of the spine. (Tr. 323, 328, 333).

On October 22, 2015, Dr. Mangat opined that Plaintiff suffered from chronic posttraumatic headaches, migraines, worse headache pain with physical activity, nausea, vomiting, sensitivity to light and sound, changes in vision, and sensory changes. (Tr. 456-457). He noted that Plaintiff's chronic head pain typically lasted more than two days. (Tr. 457). Dr. Mangat further noted that

Plaintiff suffered from very frequent prostrating and prolonged attacks of migraine headache pain. (Tr. 457). An April 2009 MRI of Plaintiff's brain revealed abnormalities. (Tr. 458). Dr. Mangat opined that Plaintiff's headache condition caused him to be unable to function in work settings. (Tr. 458).

On the same day, Dr. Mangat further opined that Plaintiff suffered from a contusion, cervical spondylosis stenosis, radiculopathy, and spinal canal stenosis. (Tr. 459). He noted that Plaintiff had painful range of motion in his neck and he was unable to perform repetitive testing due to increased pain, numbness, an electric sensation down his arms, and fatigue. (Tr. 461). Dr. Mangat noted that Plaintiff experienced guarding or muscle spasm of his cervical spine and this cause an abnormal gait. (Tr. 462). He opined that Plaintiff had "a significant and profound function loss due to pain during flare-ups and when joint is used repeatedly. Functional loss may be estimated as 80-100 during painful flare-ups." (Tr. 463). Dr. Mangat opined that Plaintiff suffered from intervertebral disc syndrome and experienced at least eight weeks of incapacitating episodes over the prior twelve months. (Tr. 467). He cited to Plaintiff's cervical MRI as objective evidence that supported his findings. *Id.* Dr. Mangat further opined that Plaintiff's neck condition:

> impact[ed Plaintiff's] ability to work in any capacity and is unemployable [due to] disability. The condition causes profound functional loss with less movement than is normal, decreased ROM, fatigue, pain on movement. [I]nterferes with standing and sitting. [P]ainful numbness in bilateral upper extremities with tingling electric sensation down arms through fingers. The above conditions are related to history of multiple IED blasts and history of head/neck injury during IED blast in 2006 while deployed in Iraq.

(Tr. 469).

In his decision, the ALJ addressed Dr. Mangat's opinion, in conjunction with another opinion, as follows:

> Bhupinder Mangat, M.D. and J Bear, M.D., completed questionnaires regarding the claimant's headaches, and cervical spine, neck, and back impairments for the Department of Veteran Affairs. Dr. Bear noted that due to depression and PTSD, the claimant has occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking or mood (Ex. 6F/3 & 7F/4). Dr. Mangat noted that the claimant lumbar impairments affect his ability to perform at any occupational level (Ex. 7F/21, 32). I give little weight to these opinions. In spite of their status as the claimant's treating physicians, I cannot assign controlling weight to their opinions because the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion and does not provide a function-by-function assessment of the claimant's limitations. Moreover, the treating relationship did not last long enough for Dr. Bear or Dr. Mangat to have obtained a longitudinal picture of the claimant's medical condition. Accordingly, their opinion does not merit the same weight that would be given to a treating physician with a treating relationship of a longer duration. Further, although these physicians performed range of testing their functional limitations lacks the specificity that would otherwise make it more persuasive. Moreover, the physical and mental examinations in the record were repeatedly normal. As a result, their opinion is inconsistent with the evidence of the claimant's activities, including attending full time college classes.
>
> In addition, Dr. Mangat opined that the claimant is unable to function in a work setting because headaches are disabling (Ex. 7F/10). Although an opinion of this nature may provide evidence of the severity of the claimant's impairments, the ultimate determination of disability is an issue reserved for the Commissioner of Social Security (20 CFR 404.1527(e) and 416.927(e); SSR 96-5p).

(Tr. 30-31).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.

*Winschel v. Comm'r of Soc Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the Court finds that the ALJ did not err by according little weight to Dr. Mangat's opinion. The ALJ correctly found that although Dr. Mangat cited some details and findings, Dr. Mangat did not provide a function by function assessment of Plaintiff's abilities, instead generally stating that Plaintiff's impairments prevent him from working. Dr. Mangat's opinion that Plaintiff was "unemployable" is an opinion on the ultimate issue of disability that is reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1). The ALJ's observation that Plaintiff's treatment relationship had not lasted long enough for Dr. Mangat to provide a longitudinal assessment was not erroneous given that Plaintiff had seen Dr. Mangat only four times before Dr. Mangat rendered his opinion. As Defendant notes, the ALJ has the discretion to weigh the length of treatment relationship in determining the weight to assign opinion evidence. *See* 20 C.F.R. §§ 404.1520b(b) and 404.1527(c)(2). Finally, the Court rejects Plaintiff's argument that the ALJ erred by failing to identify the evidence that contradicted Dr. Mangat's opinion. The ALJ thoroughly reviewed and summarized the voluminous medical record in this case in the pages preceding his discussion of the weight assigned to Dr. Mangat's opinion. Thus, while the ALJ did

not cite to specific instances in the record where Dr. Mangat's opinion was contradicted, the medical evidence discussed in the decision provides substantial evidence for the ALJ's determination.

Plaintiff has failed to demonstrate that the ALJ committed reversible error in his treatment of Dr. Mangat's opinion. Accordingly, the Court will not disturb the ALJ's findings pertaining to Dr. Mangat on appeal.

### b) Whether the ALJ erred by failing to apply the correct legal standards to the decision from the Department of Veterans Affairs.

The record indicates that the Department of Veterans Affairs assigned Plaintiff a 90% disability rating due to PTSD, migraine headaches, gunshot wound through the hip, cervical strain, and lumbar strain. (Tr. 176-77, 2106-2108). In his decision, the ALJ addressed Plaintiff's VA rating as follows:

> I have taken note that the Department of Veterans Affairs has purportedly assigned the claimant a service-connected disability rating of 90% (Ex. 6D/1 & 20F/1-3). Although a determination that the claimant is only 90% disabled is not inconsistent with a finding that the claimant is not completely disabled, I have given little weight to the Department of Veterans Affairs determination. The disability determination process utilized by the Department of Veterans Affairs does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Regulations. Thus, a disability rating by the Department of Veterans Affairs is of little probative value in these proceedings. Therefore, I have given that rating little weight.

(Tr. 31).

The Social Security Regulations plainly state that a claimant may bring evidence of an impairment to the Commissioner's attention including "[d]ecisions by any governmental or nongovernmental agency about whether [an individual is] disabled . . . ." 20 C.F.R. § 1512(b)(5).

In the Eleventh Circuit, "[t]he findings of another agency on disability, while not binding on the Commissioner, are entitled to great weight." *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983)). A VA rating of disability, while not binding, is evidence that should be given great weight. *Olson v. Schweiker*, 663 F.2d 593, 597 n.4 (5th Cir. 1981); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A 1981).

In *Brown-Gaudet-Evans v. Commissioner of Social Security*, the Eleventh Circuit held that "[i]t is not disputed that the VA's 'disability' determination relies on different criteria than the SSA's determination. But that does not mean that the ALJ can summarily ignore the VA's determination nor give it 'little weight.'" *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x. 902, 904 (11th Cir. 2016). The Court remanded the case for further proceedings and held that "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *Id.*

Plaintiff argues that the ALJ failed to apply the correct legal standard to the VA rating. The Court agrees. In this case, the ALJ accorded "little weight" to the VA rating on the basis that the VA disability determination process is different than the process used by the SSA and, therefore, "is of little probative value in these proceedings." (Tr. 31). The fact that the two agencies utilize different determination processes does not constitute good cause for rejecting evidence that is entitled to great weight.

Defendant argues that *Brown* is distinguishable from this case because in *Brown* the ALJ appears to have summarily ignored the VA's determination. (Doc. 21 p. 15). The Court rejects this argument. In *Brown*, the Eleventh Circuit specifically acknowledged that the ALJ addressed the VA rating and gave it little weight because the VA rating used a different criteria for deciding if an individual is disabled. *Brown-Gaudet-Evans*, 673 F.App'x at 904. In this case, the ALJ did

the same thing, rejecting the VA rating on the basis that the VA utilizes a different disability evaluation process.

On remand, the Court will require the ALJ to consider and closely scrutinize the VA's disability determination, provide specific reasons for the weight he accords VA's disability determination, and conduct further proceedings as necessary.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 21, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties